# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

MARY MARTINEZ,

        Plaintiff,

                                                                          1:19-cv-00870-KRS-JHR

v.

CITY OF ALBUQUERQUE, and
ALAN ARMIJO, in his official and
individual capacities,

        Defendants.

## ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS, DISMISSING FEDERAL CLAIMS, AND REMANDING MATTER TO STATE COURT

**THIS MATTER** comes before the Court on Defendant City of Albuquerque's motion to dismiss Plaintiff Mary Martinez's complaint under Federal Rule of Civil Procedure 12(b)(6). (Doc. 3). In relevant part, the City maintains that Martinez's landlord and its employee, Defendant Alan Armijo, did not act under color of law when Armijo allegedly retaliated against Martinez in violation of the First Amendment for her opposition to financial aid for individuals seeking asylum in the United States. Martinez disagrees and argues that Armijo wielded his authority as Mayor Tim Keller's director of constituent services to threaten her and demand she vacate her residence. With the consent of the parties to conduct dispositive proceedings, *see* 28 U.S.C. 636(c), the Court has considered the parties' submissions. Because the complaint does not establish that Armijo acted under of color of law, the Court **GRANTS** in part the City's motion, **DISMISSES** Martinez's federal claims with prejudice, and **REMANDS** the matter to state court.

## I. BACKGROUND

From about 2009 to May 2019, Martinez, disabled and a recipient of assistance under Section 8 of the Housing Act of 1937, leased residential property in Albuquerque owned by Armijo. (Doc. 1-2, Compl., ¶ 3; 10). Aside from being Martinez's landlord, Armijo is employed by the City and is Mayor Tim Keller's director of constituent services. (*Id.*).

Under the terms of the parties' agreement, the lease renews on August 1 of each year unless terminated by either party or superseded by a new lease. (*Id*. at ¶11). The agreement prohibits Armijo from terminating the lease during a term unless Martinez "committed a serious violation of the Lease or for other good cause." (*Id.* at ¶ 12). In fact, Armijo could only terminate the lease without cause by "providing . . . a written-notice [sic] that the Lease would not be renewed at least 30-days prior to the Lease renewing on August 1, 2019." (*Id.* at ¶13).

The 2018-2019 term unfolded without incident until the Albuquerque City Council held a public meeting on May 6, 2019 to discuss, among, other things "a proposal to provide $250,000 in aid to purported asylum seekers in Albuquerque." (*Id.* at ¶¶14-15). The Mayor supported the proposal, and the public was invited to comment on the proposed aid. (*Id.* at ¶¶16-17). Despite "the very hostile environment for those opposing the Asylum Aid, [Martinez] voiced her opposition against the Asylum Aid and expressed her opinion that the funds should be used to support the many veterans in need of those funds." (*Id.* at ¶18).

Through his employment with the Mayor's office, Armijo "became aware of [Martinez's] opposition of the Asylum Aid at the Council Meeting." (*Id.* at ¶19). On May 8, 2019, en route to an official meeting, Armijo stopped at Martinez's home, which is about ten minutes away from the meeting location. (*Id.* at ¶¶20; 24; 43-44). "[I]mmediately upon [Martinez] answering the

door, [Armijo] asked if she was moving out." (*Id.* at ¶20). Armijo later demanded Martinez move out and promised "to talk to Housing" about Martinez, which Martinez took to mean Armijo would "use his authority with the Mayor's office" against her. (*Id.*, at ¶¶21; 35). During this encounter, Armijo knew he could not evict Martinez without good cause and could terminate the lease by "simply sending . . . a letter, prior to July 1, 2019, advising that he was not going to renew [Martinez's] lease." (*Id.* at ¶23). Martinez felt threatened because of Armijo's "aggressive and authoritarian nature." (*Id.* at ¶ 34).

The visit occurred during Armijo's working hours with the City. (*Id.* at ¶¶38-40). As his job title suggests, Armijo's duties included meeting with constituents such as Martinez. (*Id.* at ¶40). Prior to this encounter, however, Armijo had never visited Martinez at her home. (*Id.* at ¶24). Armijo claimed his request for her to vacate the rental was that HUD was not paying him enough under the Section 8 program, though Martinez had always received Section 8 benefits while living in Armijo's property. (*Id.* at ¶25). In a subsequent investigation, Armijo insisted he had sent Martinez a letter before May 8, 2019, informing Martinez he would not renew the lease. (*Id.* at ¶26). Armijo "failed to produce a copy of the Letter." (*Id.* at ¶27).

During the May 8 visit, however, Armijo did not mention the letter or otherwise inquire about Martinez's receipt of the correspondence. (*Id.* at ¶28). In fact, Armijo "made comments inconsistent with him having sent the letter" and never actually mailed any letter about terminating the lease. (*Id.* at ¶¶28-29). When Armijo realized in August 2019 "that an investigation into his retaliatory Hostile Home Visit was being conducted, Armijo continued his retaliation related to [Martinez] voicing her opinion at the Council Meeting by mailing [Martinez] a letter on or about August 5, 2019 advising that she had three days to move out for

non-payment of rent since 2016." (*Id.* at ¶33). The letter came despite Armijo agreeing Martinez could deduct repairs she made to the property from the amount owed. (*Id.*).

On September 5, 2019, Martinez filed a single-count complaint in state court alleging Armijo and the City violated her right to free speech under the state and federal Constitutions. (Doc. 1-2). Armijo and the City removed the case to this Court on September 19, 2019. (Doc. 1).

## II. STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a pleading within its four corners. *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). A complaint is sufficient when it "allege[s] facts that, if true, state a claim to relief that is plausible on its face." *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2014) (internal quotation marks and citation omitted). "Plausibility" asks whether, under the substantive law that governs the claims alleged, the plaintiff has pleaded facts that "raise a right to relief above the speculative level." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012); *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008). In determining if a complaint survives a motion to dismiss, the Court assumes the truth of the facts in the pleading, takes those facts in the light most favorable to the plaintiff, and assesses whether they give rise to a reasonable inference that the defendant is liable. *See Mayfield*, 826 F.3d at 1255.

## III. DISCUSSION

Section 1983 of Title 42 of the United States Code gives a civil remedy to individuals whose federal constitutional rights have been violated by a municipal employee. 42 U.S.C. § 1983. Liability, however, "attaches only to conduct occurring 'under color of law.'" *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447 (10th Cir. 1995). "The traditional definition of acting under color of state law requires that the [municipal employee] in a § 1983 action have

exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988) (citation omitted). The under-color-of-state-law threshold is jurisdictional, aimed at "avoiding imposing on the state, its agencies or officials, responsibility for [private] conduct for which they cannot fairly be blamed." *Jojola v. Chavez*, 55 F.3d 488, 492 (10th Cir. 1995).

Although municipal "employment is generally sufficient to render the defendant a state actor[,] . . . at the same time, it is well settled that an otherwise private tort is not committed under color of law simply because the tortfeasor is an employee of the [municipality]." *Jojola*, 55 F.3d at 493 (citation and internal quotation marks omitted). Thus, before conduct occurs "under color of state law, there must be a real nexus between the employee's use or misuse of their authority as a public employee, and the [constitutional] violation allegedly committed by the [employee]." *Id.* This "real nexus" test "rarely depends on a single, easily identifiable fact, such as the [employee's] attire, the location of the act, or whether or not the [employee] acts in accordance with his or her duty." *David v. City & Cty. of Denver*, 101 F.3d 1344, 1353 (10th Cir. 1996) (internal citations and quotation marks omitted).

Here, Martinez alleges that Armijo retaliated against her for speaking out against aid to putative asylum seekers by (1) visiting Martinez at her home; (2) asking Martinez if she was moving out when Martinez answered the door; (3) demanding that Martinez move out; (4) claiming that HUD was not paying him enough; (5) insisting he was going to talk to "Housing" about Martinez; and (6) sending her a letter for nonpayment of rent. These allegations fall short of establishing that Armijo acted under the color of state law. The power to do these things were not made possible only because Armijo worked for the City and possessed state granted authority to carry out his duties. As Martinez's landlord, Armijo more plausibly could exercise his

authority to demand she move from the rental unit he owned and which the lease agreement covered. In other words, the authority to demand Martinez vacate the apartment derived from Armijo's status the owner of private property, not a municipal employee.

Martinez points to allegations in the complaint that Armijo was tasked with visiting constituents such as her to further the Mayor's pro-aid agenda. Curiously, the complaint does not actually allege Armijo met with Martinez for that purpose.[1] In any event, the test is whether Armijo "exercised authority possessed by virtue of state law," not whether he acted within the scope of his duty. *See David*, 101 F.3d at 1344. Nor are there any allegations that Martinez opened her door because Armijo was an arm of the municipal government and not her landlord. *See Haines v. Fisher*, 82 F.3d 1503, 1508 (10th Cir. 1996) ("Section 1983 was enacted to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights[.]"). Armijo did not manifest any pretense *to* Martinez that he was there to further the Mayor's agenda as some unidentified state law allowed. *See Jojola*, 55 F.3d at 493 ("Under 'color' of law means under 'pretense' of law.") (Citation omitted).

Martinez complains that Armijo came to her home during his usual working hours and en route to a meeting. But being on the clock does not itself matter. *See id.* For this case, the question is whether the complaint establishes Armijo "use[d] or misuse[d] any state authority he may have possessed," *Jojola*, 55 F.3d at 494, to meet with Martinez and demand she vacate the rental. Further, Martinez may well have thought Armijo would his use his influence as a City employee and his relationship to the Mayor to talk to "Housing," which she says was only

---

[1] Martinez's allegations on "information and belief" provide no plausible basis to believe that Armijo visited Martinez for the purpose of meeting with her as a constituent. *See Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009) ("[T]he Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context."). The facts alleged focus on the requests and demands to vacate the rental. This is not a situation where Martinez could not know the point of the meeting; there would be outward manifestations of Armijo's intent, such as communication to Martinez that Armijo was there to discuss her position on aid for asylum seekers. As alleged, the only reason Armijo gave for the meeting was that HUD was not paying enough.

possible because of his position, but her feeling about the matter does not make it so. And Martinez's claim about Armijo's ability to talk to "Housing" only *because of* his position is not an actual allegation in the complaint; it is in her brief.

Martinez asserts that Armijo's actions were inconsistent with those of a disgruntled landlord. True, according to the complaint, Armijo demanded Martinez move out immediately, but did not take further actions that he could have as a landlord. In addition, Martinez correctly points out that the complaint alleges Armijo learned of Martinez's opposition to the Mayor's pro-aid agenda by virtue of his employment at the City. But taking these averments as true, the source of his authority to demand she vacate the property was not derived from state-granted legal authority he possessed as a city employee but the contractual relationship he had with Martinez. In other words, the complaint does not plausibly establish that Armijo's actions were made possible *only* because the he "is clothed with the authority of state law." The complaint itself suggests an entirely other basis for Armijo's actions: Armijo was upset by Martinez's speech and abused his power as a private citizen and landlord to get back at her.

Because Armijo did not act under color of law, there can be no constitutional violation; and without an underlying constitutional violation, no liability attaches to the City—either as a named defendant or through Armijo's official capacity. *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013). Finally, since there are no viable federal claims here, the Court exercises its discretion to remand the remaining claims to state court. *See VR Acquisitions, LLC v. Wasatch Cty.,* 853 F.3d 1142, 1149-50 (10th Cir. 2017) (advising that when only state law claims are left for decision, the court should usually exercise its discretion to decline supplemental jurisdiction").

## IV. CONCLUSION

For the reasons above, Martinez complaint does not establish the color-of-law element necessary to allege a cognizable constitutional claim under Section 1983.

**IT IS, THEREFORE, ORDERED** that the City's motion to dismiss (Doc. 3) is **GRANTED** and Martinez's federal claims are **DISMISSED with prejudice**.

**IT IS FURTHER ORDERED** that Martinez's remaining state law claims are **REMANDED** to the Second Judicial District Court for Bernalillo County, New Mexico,

_____
KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent